# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:13-CR-6-TLS |
| | ) | CAUSE NO.: 1:14-CV-237-TLS |
| SCOT D. SILVERS | ) | |

## OPINION AND ORDER

The Defendant, Scot D. Silvers, pleaded guilty to knowingly and with intent defrauding or using one or more counterfeit access devices, the use of which affected interstate commerce, 18 U.S.C. § 1029(a)(1) (Count 1); knowingly possessing and using without lawful authority a means of identification of another person during and in relation to the felony charged in Count 1, 18 U.S.C. §§ 1028A(a)(1) & (c)(4) (Count 2); and knowingly and with intent to defraud falsely make and counterfeit any obligation and other security of the United States, 18 U.S.C. § 471 (Count 3), and was sentenced to 27 months of imprisonment on Counts 1 and 3, which ran consecutive to 24 months of imprisonment on Count 2. This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 52], filed by the Defendant on August 6, 2014, and Motion to Amend filed on October 22, 2014 [ECF No. 57].

The Defendant argues that his conviction of Count 2, § 1028A(a)(1) & (c)(4), must be vacated because he is actually innocent and the predicate offense was never charged in the Indictment. The Defendant also alleges that he received ineffective assistance of counsel because his counsel advised and allowed him to plead guilty to a faulty indictment. Further, the Defendant asserts that his counsel was ineffective regarding the validity of the collateral attack waiver. For the reasons set forth in this Opinion and Order, the Court will deny the Defendant's

Motion. In addition, the Court will not issue a certificate of appealability.

## PROCEDURAL BACKGROUND

**A.     The Charges**

On December 26, 2012, the Government filed a Criminal Complaint against the Defendant, charging him with various counterfeiting and identity theft/access device fraud offenses, in violation of 18 U.S.C. §§ 471, 472, 1029(a)(1), 1028A(a)(1) & (c)(4), and 1029(a)(4), for conduct occurring between October 8, 2012, and October 31, 2012. On January 23, 2013, the grand jury returned a five-count Indictment against the Defendant. The Indictment also contained a forfeiture allegation for electronic equipment and materials; counterfeit identification documents and credit/debit/gift cards; check book with checks; and assorted paper.

**B.     The Plea Agreement**

A written Plea Agreement between the Government and the Defendant was filed with the Court on April 10, 2013. According to the Plea Agreement, the Defendant agreed to enter a plea of guilty to Counts 1–3 of the Indictment, in return for the dismissal of Counts 4–5 at sentencing. The Defendant also agreed to forfeiture and to restitution. The Government and the Defendant also agreed to a term, not binding on the Court, providing that the Defendant was entitled to the appropriate reductions for acceptance of responsibility. In paragraph 8.a. of the Plea Agreement, the Defendant agreed to plead guilty to Counts 1–3 "because I am in fact guilty of the offenses as charged in these Counts of the Indictment." Next, the Defendant stated that he understood the maximum sentences that may be imposed for conviction of these offense:

Count 1: a term of imprisonment of not more than 10 years, a fine of not more than $250,000.00, or both such fine and imprisonment, full restitution to the victim(s) of the offense, a supervised release term of at least 1 year but not more than 3 years, forfeiture of the items referenced in the Indictment, and a $100.00 special assessment.

Count 2: a term of imprisonment of 2 years, which term is to run **consecutively** to the penalty imposed for the underlying felony (that being a violation of 18 U.S.C. § 1029(a)(1)) during which the means of identification was possessed or used, a fine of up to $250,000.00, or both such fine and imprisonment, full restitution to the victim(s) of the offense, a supervised release term of not more than 1 year, forfeiture of the items referenced in the Indictment, and a $100.00 special assessment.

Count 3: a term of imprisonment of not more than 20 years, a fine of not more than $250,000.00 or both such fine and imprisonment, a term of supervised release of at least 1 year but not more than 3 years, forfeiture of items referenced in the Indictment, and $100 special assessment. (The $300.00 special assessment is due and payable prior to my sentencing hearing).

(Plea Agreement ¶ 8.b., ECF No. 23.) After outlining the Defendant's offense level reduction for acceptance of responsibility, payment of restitution, the dismissal of Counts 4–5, and the forfeiture of property involved in the commission of the offenses, the Defendant executed the following waiver:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed, I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this Plea Agreement; with this understanding and in consideration of the government's entry into this Plea Agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under 18 U.S.C. § 3742 or any post-conviction proceeding, including but not limited to, a proceeding under 28 U.S.C. § 2255.
>
> I also agree to waive all rights, whether asserted directly or through a representative, to, after sentencing, request or receive from the United States any

> further records, reports, or documents pertaining to the investigation or prosecution of this matter; this waiver includes, but is not limited to, rights conferred by the Freedom of Information Act and the Privacy Act of 1974.

(Plea Agreement ¶¶ 8.g.–h.) In paragraph 12, the Defendant declared that he was offering his "plea of guilty freely and voluntarily and of [his] own accord," that "no promises ha[d] been made to [him] other than those contained in this [plea] agreement," and he was not "threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement."

The Court referred the matter to Magistrate Judge Roger Cosbey to conduct a change of plea hearing to determine whether the Defendant was competent to enter a plea, the Defendant knowingly and voluntarily wished to enter a guilty plea, the Defendant understood the charges against him, and there existed a factual basis for the charges. On April 16, 2013, the Magistrate Judge conducted a change of plea hearing. The Defendant took an oath and the Court made detailed inquiry into his competence to plead, the voluntariness of his plea, and his understanding regarding specific terms of the Plea Agreement. The Court found that the Defendant was fully competent and capable of entering an informed plea, that the Defendant was aware of the charges and the consequences of the plea, and that the plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

Among the provisions of the Plea Agreement that were the subject of the Magistrate Judge's inquiry were those related to his possible sentence. The Magistrate Judge also discussed the appellate waiver, specifically the fact that the Defendant was agreeing to waive his ability to appeal his conviction and sentence, and he was also giving up his ability to collaterally attack his conviction and sentence or the manner in which it was imposed through habeas corpus. The

Court asked the Defendant whether he understood that he was giving up his right to claim ineffective assistance of counsel unless that ineffectiveness related directly to the negotiation of his appellate waiver or his plea agreement. The Defendant affirmed this understanding and reaffirmed it later in the hearing. The Defendant also informed the Magistrate Judge that he was satisfied with his attorney's representation and the advice he received from his attorney in his case. The Defendant reiterated that no one had forced him to plead, threatened him, or made any promises that were not part of the Plea Agreement to get him to plead guilty, and that he was pleading guilty of his own free will. Further, the Magistrate Judge advised the Defendant of the essential elements of his offenses, which he stated he understood. The Defendant then explained in his own words what he did in connection with the charges to which he was pleading guilty, and the Government provided the factual basis in support of the charges. The Defendant answered "Yes" when asked whether he agreed with the Government's summary of his conduct. (Plea Hr'g Tr. 36:6, Apr. 16, 2013.)

After the hearing, the Magistrate Judge issued Findings and Recommendation, finding that the Defendant understood the nature of the charges against him, understood the rights he was giving up by pleading guilty, understood the possible sentences he could receive, was pleading guilty knowingly and voluntarily, was competent to plead guilty, understood his answers could be used against him later in a prosecution for perjury or false statement, and that there was a factual basis for the plea. The Magistrate Judge recommended that the Court accept the Defendant's plea of guilty. No party filed objections to the Findings and Recommendation, and the Court, on May 1, 2013, accepted the recommended disposition, adjudged the Defendant guilty of Counts 1–3 of the Indictment, and set the matter for sentencing.

## C. Sentencing

The Defendant's PSR recommended that his total offense level be set at 14, based in part on a proposed three-level reduction under U.S.S.G. §§ 3E1.1(a)–(b) for acceptance of responsibility and assisting authorities in the investigation of his own misconduct. The Defendant had a criminal history category of IV. The PSR also provided a detailed summary of the offense conduct, which included a description of the Defendant's relationship with B.L., the victim, and his unauthorized use of credit cards bearing the name B.L. The Defendant did not make any objections to the PSR, which was presented in the addendum. In the second addendum, B.L. informed the Court that he did not wish to be present at sentencing and would not be submitting a written statement.

At sentencing, the Court asked the Defendant's counsel whether he received the PSR and its addenda with sufficient opportunity to file any objections. Defense counsel responded that he had sufficient opportunity, and added that "Mr. Silvers has also seen the [PSR], the addendum to the [PSR], and the second addendum." (Sentencing Hr'g Tr. 3:21–23, Aug. 8, 2013.) The Court then asked the Defendant to verify his counsel's statement, to which the Defendant replied "Yes, Your Honor." (Sentencing Hr'g Tr. 3:25.) Subsequently, the Defendant's counsel reconfirmed that the Defendant had no objections to the PSR. The Court followed this by granting the decrease in the Defendant's offense level for acceptance of responsibilty, U.S.S.G. § 3E1.1(b), and informed the Defendant that the advisory guidelines called for 27–33 months of imprisonment on Counts 1 and 3, with a 2-year term of imprisonment on Count 2 to run consecutive to Counts 1 and 3.

After acknowledging that the Plea Agreement called for the dismissal of Counts 4–5, the

6

Court accepted the Plea Agreement and the Government moved to dismiss those counts. The Defendant stated that he understood that the Judgment would show the dismissal of Counts 4–5. The Court then gave the Defendant an opportunity to address the Court. In his statement, the Defendant said "I apologize for the wrong that I did. I know that I shouldn't have been doing what I was doing. And I have no excuses." (Sentencing Hr'g Tr. 9:11–13.) Before the Court stated the sentence, it asked "Mr. Silvers, do you agree with everything that your attorney has done and said in your behalf in this case?" (*Id.* 10:10–12.) The Defendant answered, "Yes, Your Honor." (*Id.* 10:13.) The Court sentenced the Defendant to 27 months of imprisonment on Counts 1 and 3 to run concurrent to each other, and 24 months of imprisonment on Count 2, to be served consecutive to Counts 1 and 3. The Defendant was also placed on two years of supervised release, ordered to pay restitution, and ordered to forfeit the property described in the Indictment's forfeiture count.

The Court then reminded the Defendant that he entered a Plea Agreement wherein he waived his right to appeal the conviction itself on any ground, as well as his right to contest the sentence and the manner in which it was determined in post-conviction proceedings. Further, the Court informed the Defendant that "if you believe the waiver is unenforceable, you can present that theory to the Court of Appeals." (Sentencing Hr'g Tr. 16:22–23.) When asked by the Court, the Defendant stated that he understood his appellate rights.

D.    **Habeas Motion**

On August 6, 2014, the Defendant filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The Defendant did not include

any brief in support or exhibits. In his Motion for habeas relief, the Defendant asserts three grounds for relief. In Ground 1, the Defendant claims he was actually innocent of the 18 U.S.C. § 1028A offense, and challenges the "district court's acceptance of his guilty plea" on Count 2 because the "factual basis supporting his plea did not explicitly indicate that he knew the identity at issue belonged to an actual person." (Mot. 4, ECF No. 52.) In Ground 2, the Defendant argues that the "[p]redicate offense for 18 U.S.C. [§] 1028(a)(1) was never charged in [the] [I]ndictment," as he "was not charged with identification document at issue for offense of Aggravated Identity Theft." (Mot. 5.) In Ground 3, the Defendant alleges that he received ineffective assistance of counsel because his attorney "[a]llowed [him] to plead guilty to faulty indictment, failed to move for dismissal of the aggravated identity theft count—1028(a)(1). Advised movant to plead guilty to 1028A(a)(1) count." (Mot. 6–7.)

On October 22, 2014, the Defendant filed a motion to amend that sought to add an additional ineffective assistance of counsel claim, which the Court permitted by an order dated November 3, 2014. Accordingly, in Ground 4, the Defendant asserts that

> [c]ounsel was ineffective in the validity of the collateral attack waiver in that Petitioner cannot be asked to waive something he had no clue about at the time of the waiver, which means it could not have been a knowing and intelligent waiver. The plea agreement was not knowing and voluntary because the <u>advice</u> Petitioner received from counsel was not within acceptable standards. The result of the proceeding would have been different as Petitioner would not have agreed to plead guilty to a two-year consecutive sentence or agree to a waiver had he known the charged and two-year consecutive sentence was a miscarriage of justice.

(Mot. Am. 1, ECF No. 57.)

On January 30, 2015, the Government filed its Response in Opposition to Section 2255 Petition [ECF No. 65]. The Government asserts that the Defendant is not entitled to any relief under § 2255 because his claims were waived by the explicit terms of his Plea Agreement, and

alternatively, that the Defendant has procedurally defaulted these claims. The Government further argues that his grounds based on ineffective assistance of counsel are meritless as he has not shown, and cannot show, that his counsel was ineffective. The Government requests that the Defendant's Motion be summarily denied.

On February 17, 2015, the Defendant submitted a Reply [ECF No. 66]. The Defendant contends that the Reply shows why he is entitled to relief, which includes a lengthy recitation of various cases and his assertion that, although B.L.'s name appeared on the credit cards he used, the account number was not linked to B.L.

**ANALYSIS**

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).

Here, the Defendant's waivers of his right to appeal and his right to collaterally attack his conviction and sentence, "including but not limited to, a proceeding under Title 28, United States Code, Section 2255" (Plea Agreement ¶ 8.f.), are express and unambiguous. They cite the exact

provision of the United States Code the Defendant is attempting to use to challenge his sentence. The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45). The Defendant does not allege that the Court relied on impermissible factors, such as his race, in selecting his sentence, or that he was sentenced in excess of the statutory maximum for the crime he committed. Thus the Court turns, first, to a discussion whether the Plea Agreement was involuntary and, second, to whether any of his claims are for ineffective assistance of counsel in connection with the negotiation of the Plea Agreement.

A. **Voluntariness of the Plea Agreement**

In determining whether a defendant knowingly and voluntarily entered into a plea agreement, a court examines the content and the language of the plea agreement and the plea colloquy between the defendant and the judge. *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997); *see also United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (observing that the district court must inform the defendant of an appellate waiver during the Rule 11 colloquy). When a sentencing court engages a defendant in a detailed colloquy pursuant to Federal Rule of Criminal Procedure 11, and discusses with a defendant his rights and the consequences of his guilty plea, the testimony of the defendant at that hearing is accorded a "presumption of verity." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). *Cf. United States v. Weathington*, 507

F.3d 1068, 1073 (7th Cir. 2007) (stating that a "defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, . . . faces 'a heavy burden of persuasion'") (quoting *Ellison*, 835 F.2d at 693). "[A] careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary," *United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002), and courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver, *United States v. Jemison,* 237 F.3d 911, 917 (7th Cir. 2001).

With this seemingly knowing and voluntary waiver, the Defendant is barred from collaterally attacking his sentence, save for any claims that relate to the negotiation of the plea agreement. *See Hurlow v. United States*, 726 F.3d 958, 966–67 (7th Cir. 2013). The Defendant's claims: (1) that he is actually innocent of the 18 U.S.C. § 1028A charge (Count 2) because the "factual basis supporting his plea did not explicitly indicate that he knew the identity at issue belonged to an actual person," (Mot. 4) (Ground 1); (2) that the "[p]redicate offense for 18 U.S.C. [§] 1028(a)(1) was never charged in [the] [I]ndictment," as he "was not charged with identification document at issue for offense of Aggravated Identity Theft," (*Id.* 5) (Ground 2); and (3) that his attorney "failed to move for dismissal of the aggravated identity theft count—1028(a)(1)" (*Id.* 6–7) (part of Ground 3), are barred to extent that the Defendant seeks relief for trial counsel's ineffective assistance with respect to a failure to file a motion to dismiss Count 2 of the Indictment, which has nothing to do with the negotiation of the plea agreement or the waiver. *See, e.g., Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000) (stating ineffective assistance of counsel claims that relate to anything other than plea negotiation, for example, those related to counsel's performance at sentencing, are barred by an enforceable

11

waiver); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver).

**B.     Claims of Ineffective Assistance Related to Negotiation of the Plea Agreement**

The Defendant raises claims that relate directly to the effectiveness of counsel during plea negotiations. As the Government recognizes, the Defendant's claims in Grounds 3 and 4 repackage Grounds 1 and 2 by restating them in terms of the Plea Agreement's negotiation. The Defendant argues that he could not have knowingly and voluntarily entered the Plea Agreement because he received ineffective assistance of counsel. Although the Defendant's ineffective assistance of counsel claims are captured in Grounds 3 and 4, their substance is largely identical, as both turn on the Defendant's allegation that he pleaded guilty to a "faulty indictment." (Mot. 6–7.)[1]

The Defendant only argues that he did not receive proper advice from his attorney, and but for this allegedly improper advice, he would not have entered his Plea Agreement. (Def.'s Reply 1, ECF No. 66 (stating in response to the Government's arguments addressing Grounds 1 and 2, "[t]he plea agreement was not knowing and voluntary because the advice Silvers received from counsel was not within acceptable standards. The results of the proceeding would have been different as Silvers would not have agreed to plead guilty to a two year consecutive sentence or

---

[1] The Defendant does not assert that he was coerced, that he was confused when he entered his Plea Agreement, or that he did not know he was agreeing to waive his right to appeal or collaterally attack his conviction.

12

agree to a waiver had he known Count 2 and the two year consecutive sentence was a miscarriage of justice," and then discussing the exception applicable to negotiation of a plea agreement).) The Court will analyze these specific claims on the merits.

Claims of ineffective assistance of counsel are governed by the two–pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001).

The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004). "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Martinez*, 169 F.3d 1049, 1052–53 (7th Cir. 1999)). If the Court finds either the performance or the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, then there is no need to consider the sufficiency of the other component. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

The Defendant's argument is that his counsel was ineffective by not identifying that the

13

Indictment was "faulty" as to Count 2, counsel advised him to enter the Plea Agreement even though Count 2 was "faulty," and he would not have entered the Plea Agreement, which had him plead guilty to Count 2, but for counsel's ineffective assistance. Due to the brevity of his Motion and the absence of a brief in support, his arguments that the "factual basis supporting his plea did not explicitly indicate that he knew the identity at issue belonged to an actual person," (Mot. 4) (Ground 1), and that he "was not charged with identification document at issue for offense of Aggravated Identity Theft–[Count 2]" (Mot. 5) (Ground 2), the Defendant's theory of how counsel was ineffective is somewhat ambiguous. In response to the Government's argument that he has not shown why he is entitled to habeas relief, the Defendant clarified that his counsel was ineffective because the advice "to plead guilty show that [his counsel] did not have a correct understanding as to [18 U.S.C. § 1028A's] elements of 'Means of Identification' and 'In Relation To.'" (Def.'s Reply 4.) With this clarification, the language used in Grounds 1 and 2, "actual person" and "identification document," respectively, reveal the Defendant's theory about why he believes he is actually innocent of Count 2.[2]

---

[2] The Government, lacking the benefit of the Reply, interpreted the natural meaning of the language used by the Defendant in Grounds 1 and 2 of the Motion, which provides the basis for Grounds 3 and 4. First, the Defendant's argument in Ground 1 that the "factual basis supporting his plea did not explicitly indicate that he knew the identity at issue belonged to an actual person" is unequivocally rebutted by the record. (Mot. 4.) When presenting the factual basis, the Government stated that "[B.L.] had met Mr. Silvers through some mutual friends and that [B.L.] was told Silvers could help him with his 2011 taxes. [B.L.] indicated he had given Silvers his social security number, date of birth, driver's license[,] and other personal information to prepare a tax return. [B.L.] said he did not give Silvers permission to use his name for any other purpose, nor his personal identifiers, nor information to open any credit cards in his name." (Plea Hr'g Tr. 35:17–25, 36:1.) The Defendant then stated that he agreed with the Government's summary. Second, the Defendant's statement in Ground 2, that he "was not charged with identification document at issue for offense of Aggravated Identity Theft," is unfounded. (Mot. 5.) Count 2 of the Indictment cross-referenced Count 1, which mentioned two credit cards. If the Defendant intended this to be his argument, the Government prevails.

The Defendant's claim of ineffective assistance fails because he has not shown that his attorney's acts or omissions "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker*, 7 F.3d at 633 (quoting *Strickland*, 466 U.S. at 688, 690). The Defendant pleaded guilty to Count 2 of the Indictment, which charged him with aggravated identity theft. 18 U.S.C. § 1028A. Under this section,

> Whoever, during and *in relation to* any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a *means of identification* of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

§ 1028A(a)(1) (emphasis added). The Defendant argues that he did not use "a means of identification of another person," and if the Court agrees with him on this point, then the element "in relation to any felony" was also not met. (Def.'s Reply 5–6.)

In his Reply, the Defendant asserts that he did not use a "means of identification" because although he used a credit card bearing the name B.L., there was no other information on the credit card linked to B.L. Specifically, he states that the account numbers on the cards were not linked to B.L. The Defendant explains that "[o]nly the name 'BL' on a credit card that linked to an unknown account number was presented at the hotel, thus in no way identifying a <u>specific</u> person." (Def.'s Reply 6.) The Defendant argues that a person's name, by itself, is a non-unique identifier that is insufficient to identify a specific person. Accordingly, the Defendant contends merely using a credit bearing the name B.L., without any other information linked to B.L., is

---

However, after reviewing the Defendant's Reply, the Court believes that the Government addressed an argument that is different from what the Defendant ultimately illustrated in his Reply. Nevertheless, the new theory also fails to establish that the Defendant received ineffective assistance of counsel, which will now be explained.

insufficient to satisfy the statute, and his attorney objectively failed to provide professionally competent assistance by not informing him of this before he accepted the Plea Agreement.

Even though the Defendant concedes that "[t]his Court has never ruled on the 'means of identification' statutory element," the Defendant relies upon *United States v. Mitchell*, 518 F.3d 230 (4th Cir. 2008), to show that his counsel rendered ineffective assistance. (Def.'s Reply 6–7.) The Defendant relies too heavily upon *Mitchell*. *Mitchell* does not stand for the proposition that a name alone can never be sufficient to satisfy § 1028A(a)(1). In holding that "means of identification" means "an identifier or combination of identifiers . . . that may be used to identify a specific individual," the court explained that "[a] name alone . . . would *likely* not be sufficiently unique to identify a specific individual," and the evidence had shown that two people had the name that the defendant used. *Mitchell*, 518 F.3d at 233–35 (emphasis added). Here, the Defendant has not shown that more than one B.L. exists, especially more than one who he knew personally. The Defendant knew and possessed B.L.'s "social security number, date of birth, driver's license[,] and other personal information," which the Defendant admitted was obtained under the pretext of preparing B.L.'s tax return. (Plea Hr'g Tr. 35:20–23.)

Regardless, *Mitchell* is not binding authority and the Defendant has not argued that his counsel ignored authority that this Court would have been required to follow. The Seventh Circuit has remarked that § 1028A does not define "means of identification" and it looks to a neighboring statute for guidance. *United States v. Spears*, 729 F.3d 753, 755 (7th Cir. 2013) (citing § 1028(d)(7)). Under § 1028(d)(7), "means of identification" is

> any *name* or number that may be used, *alone* or in conjunction with any other information, to identify a specific individual, including any—

16

(A) *name*, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device (as defined in section 1029(e)).

(emphasis added). The statute's plain language provides that using a person's name is sufficient to fall within the statute. *United States v. Xiao Yong Zheng*, 762 F.3d 605, 609 (7th Cir. 2014) ([Section 1028(d)(7)'s] definition is very broad. It primarily refers to intangible identifying information (e.g., name, date of birth, Social Security number, etc.)."). The Defendant has not presented any evidence to show that his counsel provided ineffective assistance as contemplated by *Strickland*. Because the Defendant's argument about the statutory element "in relation to" was contingent upon the Court finding in his favor regarding "means of identification," the Court does not reach this argument. Further, given the Defendant's failure on the first *Strickland*-prong, the Court does not address prejudice.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists

could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate"). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here because no reasonable jurist could conclude that the Defendant did not knowingly and voluntarily plead guilty pursuant to a Plea Agreement that contained an express waiver of the right to collaterally attack his conviction or sentence. In addition, no reasonable jurist could conclude that the Court's assessment of the Sixth Amendment claim was debatable or wrong regarding the negotiation of a plea agreement that called for the Defendant to plead guilty to Count 2 of the Indictment. The Court will not issue the Defendant a certificate of appealability.

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 52]. The Court declines to issue a certificate of appealability.

The Defendant also filed an Application to Proceed in Forma Pauperis, Supporting Documentation and Order [ECF No. 63]. The Defendant previously filed such an application, which the Court denied as moot because it is unnecessary with this type of action [ECF No. 54]. For those same reasons, the Defendant's present Application [ECF No. 63], is DENIED AS MOOT.

SO ORDERED on July 18, 2016.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT